## GOLDENBERG v. WALKER

---

(October 29, 1928.   Opinion and Decree.)
(November 30, 1928.   Rehearing Refused.)

---

Feitel & Feitel & Jos. A. Casey, of New Orleans, attorneys for plaintiff and appellee.

Loys Charbonnet, of New Orleans, attorney for defendant and appellant.

JONES, J. Plaintiff alleges in this suit, which was filed on May 21, 1925, that he had bought a certain Ford sedan from defendant, on April 13, 1925, for two hundred thirty-two dollars ($232.00) cash, prays for a writ of sequestration and a judgment declaring him the owner. Attached to this petition is a bill of sale from plaintiff to defendant, under plaintiff's signature, corresponding in dates and amounts to allegations, with right of redemption of car until April 16th. This document recites that there were no outstanding mortgages and no previous sales. The record shows that the petition and writ were served on defendant personally on May 22, 1925, but the Ford sedan could not be located then, and it was not seized until August 20, 1926.

Nellie Walker and her husband, Angelo Pizzo, having been permitted to bond the seizure for three hundred dollars ($300.00) on September 17, 1926, filed an intervention three days later, making the following averments:

First: Ownership of car by purchase by act under private signature from defendant on November 24, 1924, for four hundred dollars ($400.00) cash.

Second: That defendant had, without their knowledge or consent, on October 28, 1924, by act before Joseph A. Casey, Notary Public, given the Mercantile Agency a duly recorded chattel mortgage for two hundred and twenty-five dollars ($225.00), represented by a note of defendant for that amount.

Third: On March 2, 1925, defendant gave another chattel mortgage to the same agency for two hundred and ninety dollars ($290.00), evidenced by note of that date.

Fourth: That said sedan had been continuously in their possession since November 20, 1924.

Fifth: That on May 21, 1925, they first learned of these two mortgages, and in order to protect themselves they paid $___ to the agency on note dated October 28, 1924, whereupon the agency delivered to them both notes.

(N. B. *They do not say how much they paid or when, nor do they allege subrogation to its rights by the agency.*)

Sixth: They then prayed to be declared the owners of the car, or, in the alternative, for recognition of their privilege as holders of a chattel mortgage for two hundred and ninety dollars ($290.00). (There is nothing in the prayer about the first mortgage note for two hundred twenty-five dollars ($225.00), although they allege that was the note paid by them.)

Attached to this pleading is a document dated November 20, 1924, reading as follows:

"Nov. 24-1924
"I received four hundred dollars from Mrs. Nellie Pizzo Witch she holds my Ford sedan untill Witch said amount is paid with intres
Car Motor No 8661602 Licens 119526
Car is to be kept at 324 S. Claiborne St untill said amount is paid in full, I further agree to let Mrs Pizzo have the use of said car untill said amount is paid back
"John V Walker
342 S Claiborne St"

This is plainly an Act of Pledge.

On the trial of the case defendant admitted that he had sold the car to plaintiff, as alleged, but he said that his statement as to outstanding mortgages was false, as the Mercantile Agency then held two mortgages on the car. Plaintiff testified that he did not take the car from defendant when he bought it, as defendant

had a right to redeem the car for a few days, and that he filed suit shortly thereafter because he could not get delivery of the car. He further testified that the constable was unable to obtain the car, which was in the yard of defendant's brother, next door to Mrs. Pizzo's residence, because the sister, Mrs. Pizzo, and her father, stopped him and the sheriff and insulted them. Consequently, the car was not seized until more than a year later when intervenor's brother had it out on Tulane Avenue. He had been paid one hundred dollars ($100.00) on account.

The testimony of Mrs. Pizzo is involved and contradictory. She first says she bought the car in good faith on November 20, 1924, for four hundred dollars ($400.00) cash, from her brother, who was then living with her; that she had borrowed this amount—one-half from her stepmother and one-half from her brother Louis; on May 21st she paid the Mercantile Agency twenty-nine dollars ($29.00) on a note and received a receipt for that amount, which is in the record. On October 10th (year not given) she told Heymann, manager of the Mercantile Agency, that Goldenberg was trying to seize the car; whereupon Heymann told her that if she would pay the notes he would give her the chattel mortgage. She then paid him two hundred and twenty-five dollars ($225.00) in cash and he gave her both the notes. In the record are certified copies of the two acts of mortgage and the two chattel mortgage notes, signed and endorsed by defendant. One note for two hundred and twenty-five dollars ($225.00) is dated October 8th, payable monthly at $22.50 per month; the other dated March 2, 1925, is for two hundred ninety dollars ($290.00), payable $29.00 per month. These notes bear all the usual clauses as to rights of the holder in case of the failure to pay installments.

They are paraphed by the notary, but they show no payments whatever.

Intervenor further testifies that the auto was in her possession when the seizure was first attempted, but it was being driven by her brother, Louis, when it was finally taken. She swears positively that she had never heard of plaintiff's purchase until May 21, 1925, and that she was the owner of these two mortgage notes on April 13, 1925. *Plainly, this last statement is false, for the receipt shows that she made a payment on one of these notes of twenty-nine dollars ($29.00) on May 21, 1925, and she admits herself that she knew of the attempted seizure by Goldenberg about the same date.* She further swears that her brother had paid her a few dollars on the notes, but very little. On cross-examination she swears that her brother was living with her, but that the auto was kept at her father's house, three doors away; *that she got both notes on March 2, 1925, when she paid the two hundred and fifty-two dollars ($252.00).* Later, she says that she paid the notes on October 10, 1925, and received a bill of sale on that date from her brother covering this car for two hundred and twenty-five dollars ($225.00).

In the record is an original bill of sale from defendant to Mrs. Pizzo, passed before Casey, notary public, for two hundred and twenty-five ($225.00) dollars, *which amount is said* (in the act) *to have been paid by the purchaser* to the mercantile agency in settlement of a mortgage note for two hundred and twenty-five dollars ($225.00), recorded in Mortgage Book 1305, folio 463.

On page 30 she swears that she went down and paid the notes without her brother because he was away on a ship, and she did not know at the time the amount of his indebtedness.

The judgment below decreed plaintiff to be the owned of the car, but if defendant failed to deliver it, then in the alternative plaintiff was given judgment for one hundred and thirty-two dollars ($132.00) with legal interest from date, and with recognition of plaintiff's lien.

The record clearly disproves intervenor's claim of ownership and the above analysis shows that she contradicted herself repeatedly as to when she obtained the mortgage notes, and it entirely fails to show that she bought these notes. On the contrary we agree with the trial judge that she apparently paid these notes for her brother and looked to him, for reimbursement.

The issue as to payment of these notes was purely one of fact and the decision of the lower judge on this point must be affirmed, as there is no apparent error. On the contrary, the contradictions in the allegations and statements of the intervenor strongly support his conclusion.

The following authorities support this conclusion:

R. C. C., Arts. 1922, 2247, 2480.

Pons vs. Y. & M. V. R. R., 131 La. 313, 59 So. 721.

For above reasons the judgment is affirmed.